# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs October 24, 2007

## MONTEZ DICKERSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-D-2833     Cheryl Blackburn, Judge**

---

**No. M2006-02552-CCA-R3-PC - Filed January 4, 2008**

---

The Petitioner, Montez Dickerson, pled guilty to delivery of a controlled substance under .5 grams, and the trial court sentenced him as a persistent offender to ten years in prison. The Petitioner filed a petition for post-conviction relief, which was amended by appointed counsel. In the petition, the Petitioner alleges that he received the ineffective assistance of counsel and that his guilty plea was not voluntarily entered. The post-conviction court dismissed the petition after a hearing. The Petitioner appeals that dismissal, and we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and J.C. MCLIN, J., joined.

Paula Ogle Blair, Nashville, Tennessee, for the Appellant, Montez Dickerson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Sophia S. Lee, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

The Davidson County Grand Jury indicted the Petitioner on one count of the sale of less than .5 grams of cocaine and on one count of the delivery of less than .5 grams of cocaine. At the Petitioner's guilty plea hearing, the State asserted, and the Petitioner agreed, that the facts supporting the guilty plea were as follows:

> [O]n December 10, of 2003, members of the Vice Unit here in Nashville were working with a cooperating individual. They provided that cooperating individual with some money to go into the hotel Room 233 at 1902 Dickerson

Road.

She did go in. When she got inside there, there were a couple of people there, Barbara Alexander and Theodore Smith. She tried to buy the drugs. They told her they did not have it; they would have to call downstairs to get it, which they did.

At that point, Sergeant Rhett was in position to see that room as well as the room below. [The Petitioner] came out of the room below and went up to Room 233, where the transaction occurred. The cooperating individual left with the drugs, and [the Petitioner] left shortly behind her. He was stopped and arrested. The buy money was recovered in this case, although, as [the Petitioner's attorney] knows, we don't know exactly which officer did that, and the State would have also expected Ms. Alexander, who has pled guilty previously in this case and is currently in the Drug Court Program, to have been a witness for the State, and I informed [the Petitioner's attorney] of that as well.

Subsequently, the Petitioner filed a timely petition for post-conviction relief in which he alleged that he received the ineffective assistance of counsel and that his guilty plea was not voluntary. At the hearing on the petition, the Petitioner testified that he did not appeal his guilty plea. He said that his trial counsel ("Counsel") was ineffective because the two did not have a "really good relationship." They did not talk or correspond very often, and the Petitioner only saw Counsel at his court dates. The Petitioner testified that he could only call Counsel collect from the jail where he was housed, and Counsel's office did not accept collect calls. The Petitioner said that he had his wife, Dawn Dickerson, and his mother, Virginia Davis, call Counsel, and Counsel frequently did not return their calls. The Petitioner estimated that he wrote Counsel nine or ten letters with questions about his case.

The Petitioner testified that he asked Counsel to meet with Barbara Smith and Dale Smith, who were both his co-defendants. At first, Counsel told the Petitioner he could not interview either of the Smiths because they were co-defendants who were represented by counsel. The Petitioner said Counsel still did not interview the Smiths even after the Petitioner was reindicted without the Smiths named as co-defendants. The Petitioner said he hoped that his co-defendants would tell Counsel they called him on the day of the alleged crime to tell him they had the money that they owed him. The Petitioner went to the room to retrieve the money, which was why the drug "buy" money was found on him. He said he was at the Smiths for only a few seconds, not long enough to conduct a drug transaction. The Petitioner testified he also wanted Counsel to interview the other witnesses listed on the original indictment, as well as the informant. Counsel never discussed with him interviewing any potential witnesses, so he assumed that Counsel did not interview any of these witnesses.

The Petitioner also alleged Counsel failed to conduct an adequate investigation of the physical evidence in the State's possession. The Petitioner wanted Counsel to independently verify that the substance found was, in fact, drugs. Further, he wanted Counsel to ensure that the State still possessed the "buy money." The Petitioner asserted that the police could have taken a

twenty dollar bill out of his pocket and falsely claimed it was their "buy" money. He agreed the State tested the substance found and verified that it was cocaine base, but he wanted Counsel to conduct further testing to determine if that was correct. Further, he asserted that he saw the lab results and that the results did not indicate whether the drugs came from the informant or from the home. The Petitioner also contended Counsel should have investigated the chain of custody of the drugs.

The Petitioner testified he requested that Counsel obtain his telephone records and the telephone records for the hotel room where this transaction occurred. He said he was not in another hotel room as the police claimed but that he was at home when Smith and Alexander called him. He claimed he told Counsel that the phone records would verify this fact.

The Petitioner additionally wanted Counsel to file a motion to reveal the confidential informant's identity. He wanted to know whether this person was reliable and credible and whether she had a criminal record. He knew this woman only as "Wendy" and knew that she bought and used drugs. The Petitioner claimed that his conviction was void because he did not get to confront this witness.

The Petitioner finally asserted that his guilty plea was involuntary. He said that he tried all he could to obtain new counsel, including writing a letter to the trial judge, who did not respond. He asked the trial judge in person for new counsel, telling her that he and Counsel had had a "disagreement," and the judge denied his request. The Petitioner said that Counsel arrived for his trial unprepared, and Counsel moved to continue the case. The Petitioner also wrote a letter to the Board of Professional Responsibility reporting his dissatisfaction with Counsel. The Petitioner testified that, the day of trial, he arrived prepared to have his trial. He said that Counsel approached him with a plea agreement. The Petitioner told Counsel that he did not want to plead guilty because he wanted to preserve his rights on appeal. Counsel told the Petitioner, "I've been working my ass off to get this plea agreement and now you don't want it." Counsel then got upset and left. The Petitioner donned his clothes for trial and simply sat and waited. He said that, while he waited, he got scared about going to trial. He felt like he had to take this plea deal, and he had no choice. Counsel came back into the courtroom, and the Petitioner told him that he was going to plead guilty. The Petitioner felt like he had no choice because he lacked confidence in Counsel's ability to try this case.

On cross-examination, the Petitioner testified his plea agreement encompassed charges in two different cases, and, as part of this plea agreement, the State dismissed the aggravated kidnapping charge in the other case. He did not understand, however, that the kidnapping charge would be dismissed only if he pled guilty to the drug charge. The Petitioner said he did not know Alexander and Smith were potential witnesses for the State and would testify against him. The Petitioner received copies of the State's discovery response, and the State noted that the informant's name was included in its response. The Petitioner understood that, if a State's witness provided information favorable to the Petitioner, the State must disclose that information. The Petitioner agreed neither Alexander nor Smith were at the post-conviction hearing to testify on his behalf.

-3-

About the Petitioner's claim that Counsel did not adequately investigate the physical evidence in this case, the Petitioner agreed he did not have any evidence to present at the post-conviction hearing contradicting the State's laboratory results.

Counsel testified about his investigation of this case, explaining that he did not interview Alexander or Smith in this case because he spoke with the Attorney General and knew the substance of their testimony. He said that the Attorney General did not indicate that those witnesses would provide any exculpatory information on the Petitioner's behalf. About the investigation of physical evidence, Counsel testified that he relied upon the laboratory reports provided by the State during discovery. He said that the State also provided him with copies of the "buy" money. Counsel testified that he went to the hotel where this crime occurred to investigate whether Sergeant Rhett could have seen what he testified that he saw. He said that it was a clear view, making such testimony a non-issue. Counsel also called the hotel to attempt to get the phone records, but the hotel had changed ownership and could not provide those records.

Counsel said that he did not file a motion to reveal the identity of the cooperating individual because he felt that if the cooperating individual was "bad" that would come out in the suppression hearing.

Counsel agreed that he probably only visited the Petitioner twice, other than their meetings on the day of court appearances. He agreed that he did not accept collect phone calls but did accept written correspondence. He said that he made sure he saw his clients as much as reasonably possible. Counsel said that the Petitioner was housed in Clifton, "so visiting that particular TDOC facility is not very time efficient or helpful . . . [s]o [he] relied mainly on written correspondence." Counsel testified that he received many letters from the Petitioner and estimated that he responded four or five times.

Counsel testified that the Petitioner waivered about whether he wanted to take his case to trial or plead guilty. Counsel advised the Petitioner of the risks of trying the case because the Petitioner's co-defendants had become State's witnesses, the police found the "buy" money on the Petitioner, Sergeant Rhett was going to testify against the Petitioner, and the Petitioner had an extensive prior criminal record. Counsel said that he was not angry when the Petitioner said he wanted to go to trial but said that he was trying to get the Petitioner to do what he thought was in the Petitioner's best interest.

Counsel testified that he was aware that the Petitioner attempted to have him removed from the case. Counsel said that this case presented a "tough" factual situation, and the Petitioner was not happy; nevertheless, Counsel felt he could still adequately represent the Petitioner, and he told the court as much. Counsel testified that the disputes between him and the Petitioner did not affect his representation of the Petitioner. Counsel was prepared to try this case, but he was not looking forward to it. Counsel explained that the Petitioner was a career offender being tried for a class C felony. As such, he was facing a possible sentence of fifteen to sixty years. Counsel felt, in light of the evidence, that the defense would not succeed if they went to trial, and he attempted to articulate this to the Petitioner.

On cross-examination, Counsel testified the Petitioner had six prior aggravated robbery convictions. He also did not think that he gave the Petitioner the impression he was not ready to try the case. Counsel said the decision to plead guilty was the Petitioner's.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed his petition because Counsel was ineffective and his guilty plea was not knowingly and voluntarily entered.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine

whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a petitioner in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

## A. Ineffective Assistance of Counsel

The Petitioner contends that the trial court erred when it dismissed his petition because Counsel was ineffective because: (1) he failed to communicate with the Petitioner; (2) he failed to adequately investigate the witnesses and physical evidence in this case; and (3) he failed to file a motion for discovery of the cooperating individual.

## 1. Communication

Addressing the Petitioner's first contention, that Counsel was ineffective in his communication with the Petitioner, the post-conviction court found:

> Petitioner testified that he did not have a good relationship with his trial counsel, although he and Petitioner were unable to speak on the phone, he did not respond to four of Petitioner's letters. The Court finds trial counsel's testimony to be credible. Based on all the above, does not find that [Counsel] failed to adequately consult with Petitioner.
>
> Assuming, *in arguendo*, however, that [C]ounsel only met with Petitioner on court dates, Petitioner has still failed to show that the number of meetings he had with [C]ounsel was so deficient as to constitute ineffective assistance of counsel. Nothing in the record indicates trial counsel failed to meet with the petitioner and keep him informed of the proceedings. . . .
>
> Petitioner even testified at his plea hearing that trial counsel had explained to him the nature and consequences of his charges.

We conclude that the evidence does not preponderate against these findings. Counsel received many letters from the Petitioner and wrote the Petitioner back on four occasions. Counsel visited the Petitioner in jail twice, and the two met at each of the Petitioner's multiple court appearances. Under these circumstances, we conclude that Counsel's communication with the Petitioner did not fall below a reasonable standard.

## 2. Investigation

The Petitioner next contends that Counsel failed to adequately investigate this case. He asserts that Counsel should have: (1) interviewed witnesses Alexander and Smith; (2) independently determined whether the substance found was cocaine; (3) discovered whether the State had the "buy" money; and (4) investigated the chain of custody of the drugs. The post-conviction court found:

> Petitioner also testified that [C]ounsel failed to interview Barbara Alexander and Dale Smith even though he asked him to interview everyone listed on the indictment. Petitioner testified he felt that Barbara Alexander and Dale Smith could be called as defense witnesses, but that trial counsel told him that there was no reason to interview them and that they would not help [the] case. Petitioner felt the testimony would be helpful because the State alleged that the buy money had been found on Petitioner's person but really Petitioner had previously loaned money to Smith and Smith was repaying the loan.
>
> Trial counsel testified that he was unable to interview Barbara [Alexander] or Dale Smith, who were Petitioner's co-defendants. Trial counsel stated he had spoken with General Gunn about the case and that he could not think of any way to get their testimony under oath before trial. Additionally, the State's

Supplemental Discovery Response, filed December 21, 2004 (admitted as Ex. 3) notes additional witnesses that the State potentially intended to call as witnesses at trial, which included Petitioner's co-defendants . . .

In regard to Petitioner's claim that trial counsel was ineffective for failing to interview witnesses, the Court notes that "when a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." . . . This Court is not permitted to speculate on what a witness' testimony might have been if introduced by counsel. Petitioner did not present any testimony from alleged potential witnesses; thus, Petitioner has failed to establish by clear and convincing evidence that he was prejudiced by trial counsel's alleged failure to interview potential witnesses.

Regarding the physical evidence, trial counsel stated that he had received the lab report and had relied on the discovery provided by the [State] that showed the substance tested positive as cocaine. The only physical evidence in this case was the cocaine and the buy money. Since the lab report and photocopies of the buy money appeared in discovery, counsel did not go to the property room to inspect either piece of evidence. . . . [T]he Court finds that Petitioner has failed to demonstrate that trial counsel was ineffective for failing to further investigate his case nor has Petitioner demonstrated any prejudice to this alleged deficiency.

First, we note the long standing principle that when a claim of ineffective assistance of counsel is predicated upon a failure to investigate, the petitioner is obligated to show what a reasonable investigation would have revealed. *See Owens v. State*, 13 S.W.3d 745, 756 (Tenn. Crim. App. 1999). In the case under submission, the Petitioner has not provided any evidence to show how interviewing Alexander or Smith would have benefitted him. Additionally, he has not shown that further testing of the drugs found or viewing the "buy" money would have aided his defense. Finally, he did not offer evidence to show that the chain of custody was, in any way, compromised. Therefore, under these circumstances, he is not entitled to relief on this issue.

### 3. Motion

The Petitioner also contends that Counsel was ineffective for failing to file a motion to discover the identity of the cooperating individual. The Petitioner asserted that he wanted to learn whether the cooperating individual was credible. The post-conviction court found:

Petitioner testified he requested counsel to . . . find out the identity of the confidential informant. . . .

[T]he State's Supplemental Discovery Response . . . notes additional witnesses that the State potentially intended to call as witnesses at trial, which . . . identified the confidential informant (the last name in the list). Thus, Petitioner was in fact made aware of the confidential informant's identity prior to trial.

As the post-conviction court found, the Petitioner had access to the confidential informant's identity prior to trial. Counsel forwarded a copy of the State's discovery packet to the Petitioner, and the Petitioner acknowledged that he received that packet. The Petitioner contends that he did not know that the informant's name was listed in the packet and that Counsel should have discovered this fact.

Again, the Petitioner has not shown how any further investigation into the informant's identity would have aided him in his defense. *See Owens*, 13 S.W.3d at 756. Evidence concerning the credibility of the witness was not presented at the post-conviction hearing. He is, therefore, not entitled to relief on this issue.

## B. Guilty Plea

Finally, the Petitioner contends that his guilty plea was involuntary because he felt forced to plead guilty due to the fact that he lacked confidence in Counsel's ability to try this case. When deciding this issue, the post-conviction court quoted extensively from the guilty plea hearing wherein the Petitioner expressed his reservations about Counsel's representation of him and Counsel's trial preparation. After the Petitioner expressed these reservations, the trial court asked the Petitioner whether he still chose to plead guilty in light of Counsel's representation, and the Petitioner expressed his desire to enter a plea of guilty.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford,* 400 U.S. at 30. The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner,* 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State,* 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." *Blankenship v. State,* 858 S.W.2d 897, 904 (Tenn. 1993).

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Id.* at 904. The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *State v. Pettus,* 986 S.W.2d 540, 542 (Tenn. 1999); *Blankenship,* 858 S.W.2d at 904.

In the case under submission, Counsel advised the Petitioner about the risks of going to trial. The Petitioner was facing fifteen to sixty years in prison, and his six prior aggravated robbery convictions made this scenario more difficult. Counsel advised the Petitioner that his co-defendants had become State witnesses, and the buy money was found on the Petitioner. He explained this was a tough factual situation and pleading guilty was in the Petitioner's best

interest. The lengthy colloquy between the Petitioner and the trial court at the plea hearing indicates that the trial court asked the petitioner if the plea was freely and voluntarily made; if he had been informed of the elements of the crime, burden of proof, and defenses; and if he understood: (1) the nature of the charges against him; (2) that by pleading guilty he was giving up the right to a trial by jury; (3) that by pleading guilty he was giving up the right to confront witnesses; and (4) that by pleading guilty he was giving up the right to self-incrimination. The Petitioner indicated that he understood each point. The Petitioner has failed to prove that his guilty plea was not knowing or voluntary. This issue is without merit.

### III. Conclusion

Because the Petitioner has failed to prove he is entitled to post-conviction relief by clear and convincing evidence, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE